Sam Clayton
1049 Market St, #203
San Francisco, CA  94103

Plaintiff

FILED

2007 AUG 24  PM 1: 32

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **SAM CLAYTON**, et al.,<br><br>                    Plaintiff,<br>v.<br><br>**Secretary of Dept of Homeland Security, aka Michael Chertoff;**<br>**Director of US Citizenship and Immigration Services, aka Eduardo Aquire;**<br>**Deputy District Director of US Citizenship and Immigration Services' San Francisco Office, aka David Still;**<br>**Director of FBI aka Robert S. Mueller;**<br>**Attorney General;**<br>**Department of Homeland Security; US Citizenship and Immigration Services; FBI; United States;**<br><br>                    Defendants. | Civil Action No. C 07-02781 CW<br><br>**PLAINTIFF'S NOTICE OF MOTION FOR SUMMARY JUDGMENT, MOTION, AND MEMO**<br><br>2 PM September 27, 2007<br>Courtroom 2<br>Judge Wilken |

Plaintiff will present his motion at courtroom 2, 4th Floor at the Oakland federal courthouse.1301 Clay Street, Oakland, CA 94612-5212.

## I.  **INTRODUCTION**

This is a straight forward case of the US Citizenship and Immigration Services' (CIS) delay in processing plaintiff's I-485 (Green card) Application, which would entitle him to work, travel, and earn time toward becoming a citizen.  In recent years the CIS has been delaying review of immigration applications, leading a growing number of immigrants to turn to the court.   See Boston Globe Article attached as Exhibit A.  Plaintiff here turns to the court to seek an order compelling CIS to review his I-485 Application.

## II. **THIS MOTION IS FILED WITH SUFFICIENT NOTICE**

The official Commentary to Local rule 56-1 provides

> FRCivP 56 allows summary judgment motions to be served 10 days before the hearing with or without supporting affidavits. Opposing affidavits may be served the day prior to the hearing. While the Court may not preclude a party from proceeding in accordance with the Federal Rules, it may reschedule the hearing to allow a party an opportunity to respond in the time and manner provided by Civil L.R. 7-2 and 7-3.

This motion is filed with more than 10 days notice, and so provides sufficient notice, notwithstanding the court's discretion to postpone the hearing date.

## III. **FACTS**

Plaintiff Filed an I-485, application to register permanent residence or adjust status with the U.S Citizenship and Immigration Services, pursuant to Section 245 of the Immigration and Naturalization Act.  Plaintiff's Declaration at 1.  This petition along with an I-130 and supporting documentation was filed at the San Francisco office in or about 8/14/06.  Id.  Fingerprints were submitted to the USCIS on or about 9/6/06.  Id.  The Plaintiff was interviewed on 11/14/06, and

was informed that the USCIS had not completed his background check, and therefore was unable to approve the petition. Id.

On about 4/2/07, Plaintiff wrote the USCIS at its San Francisco office in order to inquire information about the status of his case and has not heard back. Id. The USCIS still had not completed his background check, and it could be months till it is complete. Id. Defendants have failed to properly adjudicate the petition. Id. They have failed to adhere to their own regulations and have improperly delayed the processing of the Plaintiff's I-485 Application after the Plaintiff has submitted a properly executed application. Id. It has been over 9 months since Plaintiff filed his I-485. Id.

Defendants have sufficient information to determine Plaintiff's eligibility pursuant to applicable requirements. Id. Defendants' delay in this case is as a matter of law arbitrary and not in accordance with the law. Id. Defendants willfully and unreasonably have inappropriately refused to adjudicate the petition, thereby depriving plaintiff his rights. Id.

Plaintiff has been greatly damaged by the failure of the Defendants to act in accord with their duties under the law. Id. Plaintiff has been unable to obtain legal permanent residence, travel, and work without restriction, and accrue time to be eligible for Naturalization as a citizen of the US. Id.

Plaintiff wrote a letter on about 4/2/07 to the San Francisco office, stating the urgency of his case. Id. Defendants are in violation of the Administrative Procedures Act, 5 USC § 701, are unlawfully withholding action on the Plaintiff's application, and have failed to carry out adjudicative functions delegated to the by law. Id. Plaintiff has provided sufficient evidence of his attempt to secure adjudication of these applications, all to no avail. Id.

## IV. LAW

28 USC § 1361 provides for mandamus actions to compel the United States to perform its duties. The Immigration and Naturalization Act establishes a clear right to relief for adjustment of status applicants. Paunescu v. INS, 76 F. Supp. 2d 922 932 (D.N.M., 1999). Moreover,

defendants have a duty to administer plaintiff's application.  See Patel v. Reno, 134 F.3d 929, 933 (9th Cir., 1997); Yu v. Brown, 36 F.Supp. 2d 922, 932 (D.N.M. 1999).

Manadamus is appropriate when the government fails to act in a reasonable time.  Kim v. Ashcroft, 340 F. Supp. 2d 384 (S.D.N.Y., 2004); Yu at 930.  The Immigration and Naturalization Services may be taking unreasonable delay even if it proceeds within its own guidelines.  Singh v. Ilchert, 784 F. Supp. 759, 764 (N.D. Cal., 1992).  For applicants for adjustment of status, exhaustion of administrative remedies is excused because this situation constitutes an "indefinite timeframe for administrative action."  Idhir v. INS, 301 F.3d  492, 489-99 (7th Cir., 2002).

Wherefore, the court should grant summary judgment and order defendants to adjudicate plaintiff's I-485 (Green Card) Application within 10 days.

Dated:   August 21, 2007

Very truly yours

Sam Clayton

Exhibit A: Boston Globe Article:

http://www.boston.com/news/nation/articles/2005/12/17/immigrants_are_suing_to_speed_up_citizenship/

# Immigrants are suing to speed up citizenship

### *Willing to risk confrontation to end delays*

By Shelley Murphy, Globe Staff | December 17, 2005

Immigrants trying to become US citizens, often frustrated by long delays during their background checks, are increasingly suing the federal government to force decisions on their cases.

This year, 29 lawsuits have been filed in federal courts in Massachusetts against the Department of Homeland Security and US Citizenship and Immigration Services by immigrants citing long waits on their applications for citizenship or permanent residency. That's an increase from four such suits filed last year.

The legal tactic is showing some signs of success. The US Citizenship and Immigration Services now asks the FBI to expedite an applicant's background check once a federal suit has been filed, according to a memo circulated last January by the agency and obtained by the Globe.

Ten of the 29 Massachusetts suits were settled within months, according to court records.

Raed Suleiman, a doctor born in Kuwait, had been waiting nearly three years for a decision on his citizenship application when he filed suit in Boston in November 2004. US District Judge Rya W. Zobel ordered the government to complete Suleiman's background check, and in April he became a US citizen.

---

▶ Their lives remain on hold, tangled in the unexplained

---

"It revived my trust in the judicial system in this country," said Suleiman, 39, formerly of Burlington, who works in the intensive care unit at a West Virginia veterans hospital.

Still, the decision to file was not easy.

"I felt by pursuing this lawsuit I might put myself in jeopardy with the government," Suleiman said, but "at some point I really needed an answer, I needed some peace of mind."

Boston immigration lawyer Desmond Fitzgerald said it's unfair for immigration officials to delay a case so long that immigrants feel the only way to get a decision is to sue, which is expensive.

"Nobody likes to go to court for anything, but especially if your status here is so questionable," he said.

Suleiman said he doesn't know why his background check took so long because he's always been law-abiding and has been working in federal hospitals, treating American veterans, including some who fought in Iraq.

There are no centralized statistics on such suits, but immigration lawyers and organizations say they are on the rise nationwide.

"I think people are getting frustrated, and their fear of going to court is outweighed by their frustration and their sense that this is really an unreasonable time the government is taking," said Nadine K. Wettstein, director of the American Immigration Foundation's legal action center in Washington.

Delays have worsened since Sept. 11, 2001.

Gregory Romanovsky, a Boston immigration lawyer who filed suits on behalf of two Russian men earlier this year, said: "Basically right now this is the only thing that works when the case is stuck. I'm sure there have always been cases where a case just gets stuck in a black hole, but definitely post-9/11 it's been a disaster."

Some of the immigrants who filed suits, as well as immigration lawyers, said they believed that Middle Easterners and Muslims face more scrutiny and are more likely to face delays than other immigrants seeking citizenship. But federal officials said there's no profiling when it comes to background checks.

The lawsuits filed in Massachusetts were brought by immigrants from many different countries, including Russia, China, Colombia, Brazil, India, Nigeria, Jordan, Iran, and Turkey.

The suits say that after providing the required documentation and being interviewed and fingerprinted, immigrants have waited one to nine years for a decision on their applications. They are demanding that judges rule on their cases or order immigration officials to make a decision.

Federal law requires the government to rule on applications within 120 days after an applicant's examination. An examination requires an applicant to be fingerprinted, interviewed by immigration officials, pass a test on US history and government, and demonstrate that they can read, write and understand English.

But while immigration lawyers say the 120-day deadline begins after the applicant's interview with immigration officials, prosecutors contend the clock doesn't start until the background check is completed.

Most background checks, which involve checking a person's name and birthdate with various federal and international agencies' watch lists and databases, clear quickly. About 94 percent are completed within a month, and another 5 percent are resolved within six months, according to federal officials.

But the rest can take months or years, because "derogatory information" surfaces that requires investigation, said Bill Carter, a spokesman for the FBI in Washington. There may be some indication that an applicant has a criminal record or that his name surfaced in an investigation or on a watch list.

"The FBI priority remains to protect the United States from a terrorist attack," Carter said. "We must ensure the proper balance between security and efficiency. We have to make sure before we make a call on any individual that the person doesn't pose a security risk."

Some investigations stall, he said, because negative information about an applicant comes from a country that has no diplomatic relations with the United States and cannot be verified. He said the FBI has been working on the problem with the State Department.

William Strassberger, a spokesman for Citizenship and Immigration Services in Washington, said the agency processes about a half-million citizenship applications each year, of which about 5,000 will probably have delays based on background checks.

Denis C. Riordan, district director of the Boston office of the Citizenship and Immigration Services, said that in the past year the average waiting time on an application filed in Boston was six months for citizenship.

Riordan said the agency recently borrowed 13 workers to help cut a backlog.

But immigration lawyers say suits are becoming increasingly attractive to immigrants who can't find out whether their delay is rooted in security concerns or bureaucratic inefficiency.

Suleiman, who filed his application for citizenship in February 2002, said officials told him his background check was incomplete, but wouldn't disclose their concerns.

It was frustrating, he said, because his loyalty is to the United States, where he found safety and opportunity.

He said he left Kuwait after the Iraqi invasion, because his family suffered financially and socially. He was a Jordanian citizen and a doctor when he came to the United States in 1993 for further medical training.

"I said I think it's my right if there's anything against me to know," said Suleiman. "If my name needs to be cleared, I should work on it, but don't leave me hanging like this."■

© Copyright 2006 Globe Newspaper Company.